# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Nov 20, 2020
s/ Daryl Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
)  Case No. 20 MJ 244
A LG Smartphone, Model LM-K500MM, IMEI: 355041-61-268164-8,currently )
stored in the United States Marshals Service Office in a secured Evidence )
Room located at the United States Federal Building and Courthouse 517 E. )
Wisconsin Ave., Suite 38, Milwaukee, WI 53202. )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the __Eastern__ District of __Wisconsin__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 2250 | Failure to Register as a Sex Offender |

The application is based on these facts:
See affidavit

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Deputy U.S. Marshal Bryan Friedrich
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means)*.

Date: November 20, 2020

*Judge's signature*

City and state: Milwaukee, WI       Hon. William E. Duffin, U. S. Magistrate Judge
*Printed name and title*

# IAFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, **Bryan Friedrich**, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Deputy United States Marshal with the United States Marshals Service and have been since 2016. As part of my duties, I investigate violations of federal and state laws, including those relating to fugitives. I have also received specialized training in the investigation of violations of the Adam Walsh Act as well as specialized training in the electronic communications field.

3. I make this affidavit in support of an alleged violation of the Adam Walsh Act, Title 18 U.S.C. Section 2250(a), which provides in part as follows:

> **Failure to register**
> (a) **In general**. –Whoever-
> (1) Is required to register under the Sex Offender Registration and Notification Act;
> (2) (A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country, and
> (3) knowingly fails to register or update a registration as required by the Sex Offender and Notification Act; . . .

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. I am submitting this affidavit in support of a search warrant for a LG Smartphone, Model LM-K500MM, IMEI: 355041-61-268164-8, hereinafter referred to as "Device A." Device A is currently stored in the United States Marshals Service Office in a secured Evidence Room located at the United States Federal Building and Courthouse 517 E. Wisconsin Ave., Suite 38, Milwaukee, WI 53202.

6. The applied-for warrant would authorize the forensic examination of Device A for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7. Based upon my training, experience, and discussions with other law enforcement officers involved in the investigation of fugitives and violations of the Adam Walsh Act, I know that individuals who are wanted fugitives as well as sex offenders who are non-compliant will continue to use cellphones to remain in communication with family, friends and associates. It is my experiences that fugitives and non-compliant sex offenders will discuss their flight from prosecution as well as their continued non-compliance with the sex offender registry. Examples of this include:

> *(United States of America v. Sean Matthews, case number 13-CR-00083-JPS)* On April 18, 2013, Matthews was charged by criminal complaint in the Eastern District of Wisconsin with Failure to Register as a Sex Offender in violation of Title 18 U.S.C. 2250(a) and a warrant was issued for his arrest. Also on this date the Honorable Magistrate Judge William E. Callahan authorized a search warrant (13-M-453) authorizing the search of Matthews' residence for evidence of violation of Title 18 U.S.C. 2250(a). On April 22, 2013, Matthews was arrested and the search warrant executed at his residence by your Affiant and members of the U.S. Marshals Fugitive Task Force. Among the items seized from Matthews' residence were two cellphones. The resulting search of Matthews' phones, as authorized by the search warrant, found evidence of Matthews having been employed and having continued to maintain residency within the Eastern District

of Wisconsin to include text messages between himself and his girlfriend about his employment and photographs taken of Matthews in and around his residence.

*(United States of America v. James Smith, case number 14-CR-00191-RTR)* On September 22, 2014, Smith was charged by criminal complaint in the Eastern District of Wisconsin with Failure to Register as a Sex Offender in violation of Title 18 U.S.C. 2250(a) and a warrant issued for his arrest. On September 23, 2014, Smith was arrested by the U.S. Marshals Service in the Southern District of Mississippi. Smith's cellphone was seized from him at the time of his arrest. October 13, 2014, a search warrant authorizing the search of Smith's cellphone was authorized by the Honorable Magistrate Judge Nancy Joseph (14-966M(NJ)). The resulting search of Smith's phone revealed evidence of Smith knowingly failing to register as a sex offender to include text messages between Smith and his sister where they discuss his failure to register as a sex offender and Smith's desire to further elude law enforcement.

8. On August 14, 2000, Cisco Roushia, hereinafter referred to as "Roushia," was charged in Racine County Circuit Court, Racine County, WI, with 2nd degree sexual assault of a child - Victim 12-15 years in court case number 2000CF000647. According to the criminal complaint, Roushia invited the victim into her own bedroom, shut the door, and removed the doorknob from the door, hindering the door from being opened. The victim attempted to exit the bedroom, but Roushia grabbed her and pulled her back to the bed. Roushia then proceeded to hold the victim down on her back, covered her mouth, and removed her clothes. Roushia then removed his pants and forced his penis inside of the victim's vagina, thrusting back and forth rapidly. The entire incident lasted approximately 10 minutes.

9. On November 27, 2000, Roushia pled guilty to an amended charge of 3rd degree sexual assault of a child -victim age 12-15.

10. On February 2, 2001, Roushia was given a withheld sentence and ordered to 5 years of extended supervision.

11. As a result of this conviction, Roushia is required to register as a **Tier II** Sex Offender for **25 years from the date of his conviction**.

12. Roushia acknowledged his requirement to register as a sex offender with the Wisconsin Sex Offender Registry (WISOR) by signing form DOC-1759 and 1759A, "Sex Offender Registration" on at least the following dates: 03/28/2001, 08/10/2001, 03/18/2003, 04/28/2003, and 05/12/2003. Language contained within these forms reads in part:

> I have been notified of my duty to register in accordance with Wisconsin Statute 301.45. I have read the requirements as indicated on the **reverse side** of this form. I understand that I am legally required to supply this information, and that failure to comply, or providing false information, may be cause for revocation and/or further criminal prosecution. I understand that this information will be used for law enforcement purposes and other purposes established by law.
>
> **When On Wisconsin Department of Corrections Supervision**
> <u>Prior</u> to any change in residence, employment, school enrollment, or name change, report the change directly to your assigned Community Corrections agent. You will also need to report the change to SORP by calling 1-800-963-3363.
>
> If required to register, you are subject to the Wisconsin DOC-SORP requirements whether you reside in Wisconsin or any other state or country.
>
> You must report any changes in your residence, employment status and school enrollment to DOC SORP throughout your required registration period, within 10 days of the change.

13. On December 10, 2003, Roushia's extended supervision was revoked and he was sentenced to 1 year and 4 months in state prison. Roushia's extended supervision was revoked for non-compliance that included, but not limited to, failing to report to his parole agent and resisting arrest, obstruction, and providing a false name to law enforcement.

14. On April 5, 2005, Roushia was released to end of sentence and continued to acknowledge his requirement to register as a sex offender with the WISOR by signing Form

DOC-1759 and 1759A, "Sex Offender Registration" on at least the following dates: 04/07/2005, 05/12/2005, 12/02/2005, 12/09/2005, and 12/22/2005.

15. On March 16, 2006, Roushia's extended supervision was again revoked and he was sentenced to 3 years, 4 months, and 25 days in state prison. Roushia's extended supervision was revoked for non-compliance that included, but not limited to, committing new criminal conduct, sexual assault, on or about December 24, 2005 [2007CF000467], failing to report to his parole agent, absconding from supervision, deviating from his Electronic Monitoring Schedule, and obstructing law enforcement.

16. On April 20, 2007, Roushia, was charged in Racine County Circuit Court., Racine County, WI, with 2nd degree sexual assault, false imprisonment (2 counts), sex with child age 16 or older (2 counts), 1st degree sexual assault/aided by others, and 2nd degree sexual assault/use of force in court case number 2007CF000467, which occurred as described in paragraph 15. According to the criminal complaint, Roushia invited the victim into a bedroom and attempted to undo her belt. The victim told Roushia "No", but Roushia pushed the victim onto her back, pulled her jeans down, and pinned her legs up so that her knees were against her chest. Roushia then inserted his penis into the victim and had sexual intercourse without the victim's consent.

17. On July 15, 2008, Roushia pled guilty to an amended charge of 3rd degree sexual assault.

18. On March 27, 2009, Roushia was sentenced to 4 years and 6 months in state prison and 4 years and 6 months extended supervision.

19. As a result of this second conviction, Roushia is now elevated to **Tier III** and is required to register as a Sex Offender **for the remainder of his life** as a repeat Sex Offender.

5

20. On October 25, 2011, Roushia was released from custody upon the conclusion of his revocation sentence. Roushia continued to acknowledge his requirement to register as a sex offender with WISOR by signing Form DOC-1759 and 1759A, "Sex Offender Registration" on at least the following date: 06/21/2011.

21. On January 25, 2012, Roushia's extended supervision was again revoked and he was sentenced to state prison. Roushia's extended supervision was revoked for non-compliance that included, but not limited to, posting a profile of himself on the Internet website called Facebook, possessing a cellphone capable of accessing the internet, and possessing photographs, pictures, or the effects of a person under 18 years of age.

22. On June 25, 2013, Roushia was released from custody upon the conclusion of his revocation sentence. Roushia continued to acknowledge his requirement to register as a sex offender with WISOR by signing Form DOC-1759 and 1759A, "Sex Offender Registration" on at least the following dates: 07/17/2013, 11/08/2013, 12/10/2013, 04/28/2014, 07/01/2014, 05/14/2015, 08/04/2015, 07/09/2016, and 05/12/2016.

23. On September 13, 2017, Roushia's extended supervision was revoked and he was sentenced to the Racine County Jail for 250 days. Roushia's extended supervision was revoked for non-compliance that included, but not limited to, engaging in an unapproved sexual relationship and being dishonest to his parole agent.

24. Roushia was subsequently released from custody upon the conclusion of his revocation sentence. Roushia continued to acknowledge his requirement to register as a sex offender with WISOR by signing Form DOC-1759 and 1759A, "Sex Offender Registration" on at least the following date: 01/22/2019 and 12/16/2019.

25. On April 16, 2019, Roushia reported to the Wisconsin Sex Offender Specialist, Sandy Cornell that he would be moving to 1137 Woodbridge St., Saint Paul, Minnesota, 55117, however he had not yet moved.

26. On May 5, 2019, Roushia was discharged from supervision with the Wisconsin Department of Corrections on all of his active criminal cases.

27. On or before October 2, 2019, Roushia moved to and established residency in the State of Minnesota. On October 2, 2019, Roushia acknowledged his requirement to register as predatory offender with the Minnesota Predatory Offender Registration by signing form Predatory Offender Registration. Language contained within these forms reads in part:

> I understand that I must register for a **minimum period of 10 years** from the date I was initially registered.
>
> I understand that I must register all changes to my primary address, including moving to another state, at least **five days prior to moving**. I understand that if I do not have five days advance notice of a change to my primary address, I must report the change **immediately**. I understand I must make these notifications by completing the Minnesota Predatory Offender Change of Information Form with my corrections agent, or if I do not have a corrections agent, I will complete the form at the law enforcement authority with jurisdiction for the address I am leaving. I understand I must sign the Change of Information form.
>
> I understand that if I move to another state, I must provide written notification to the registration agency in the new state. Additionally, I understand that the Minnesota Registry will mail a Verification Form within 10 days in order to have my Minnesota registration requirements suspended. I understand that I must register again if I return to Minnesota to live, work, or attend school at any time before the end of my Minnesota registration period.

28. Minnesota's Bureau of Criminal Apprehension (BCA) sent Roushia Notice Letters on at least 09/28/2020, 10/22/2020, and 10/28/2020 to verify his address and update his registration as required. All three notices were returned to BCA as unable to be delivered, return to sender.

29. On January 8, 2020, BCA sent a request to the Saint Paul Police Department to conduct a residence check for Roushia at his registered address, 1137 Woodbridge St., Saint Paul, Minnesota, 55117. The Saint Paul Police Department concluded that Roushia was not living at his primary address listed on his Predatory Offender Registration Form.

30. On February 11, 2020, Ramsey County, Minnesota charged Roushia for failure to register as a predatory sex offender and a warrant issued for his arrest.

31. On September 27, 2020, Roushia was arrested by Racine Police Department. Information from the Racine Police Department arrest report (Incident Report Number 20-041752) included the following,

> "officers were called to the 1000 block of West Boulevard for a call referencing a man down. The party whom was asleep in the grass near Mound Cemetery was later identified as Cisco Roushia (Phoenix/DOT). Roushia had a confirmed Non-support warrant [2001PA000137PJ] for his arrest."

In addition to his non-support warrant in Racine County, Wisconsin, Roushia also had a second non-support warrant issued in Oconto County, Wisconsin. Following his arrest, Roushia was provided Sex Offender Registration Form DOC-1759 while in custody at the Racine County Jail. Roushia's address was updated with the State of Wisconsin, to the Racine County Jail address of 717 Wisconsin Avenue, Racine, Wisconsin as his registered address. It is unknown if Roushia received this form. However this form is an included document in his Wisconsin Sex Offender Registry file. Roushia did not sign this form and it was returned to the Wisconsin Sex Offender Registry without signature by the Racine County Jail.

32. On October 7, 2020, Racine County Sheriff's Office canceled their warrant for Roushia and transferred his custody to the Oconto County Sheriff's Office, Oconto, WI.

8

33. On October 21, 2020, Roushia was released from the Oconto County Jail on a $500 cash bond. For reasons unknown to your Affiant, neither the Racine County Sheriff's Office nor the Oconto County Sheriff's Office checked Roushia for warrants prior to his release nor contacted the Ramsey County Sheriff's Office regarding their active and outstanding felony warrant. Prior to his release, Roushia provided his home address to the Oconto Circuit Court as 1117 Hayes Avenue, Racine, WI.

34. Following Roushia's release from custody from the Oconto County Sheriff's Office, Deputy United States Marshal (DUSM) Stead, in the District of Minnesota, became aware of his being in custody in Oconto County, WI. Upon learning of Roushia's release, DUSM Stead opened an investigation into Roushia for potential violations of the Adam Walsh Act, 18 U.S.C. § 2250(a).

35. On October 26, 2020, DUSM Bryan Friedrich received a request for assistance from the District of Minnesota (D/MN). DUSM Stead, requested assistance in locating and apprehending Roushia based upon the outstanding Ramsey County warrant, charging Roushia with Failure to Register as a Sex Offender as noted in paragraph 30. Additionally, DUSM Stead requested that an investigation into Roushia be initiated in the Eastern District of Wisconsin regarding potential charges of Failure to Register as a Sex Offender in violation of 18 U.S.C. § 2250(a).

36. On October 27, 2020, DUSM Friedrich opened an investigation to determine if Roushia is in violation of 18 U.S.C. § 2250, Failure to Register as a Sex Offender.

37. On October 28, 2020, DUSM Friedrich received jail call recordings of jail calls made by Roushia while in custody at the Oconto County Jail. Roushia made several calls to family and friends including his sister, Stacey Littleton; his mother, Debra Roushia; his mother's

boyfriend, James Kemps; and his friend, "Peanut" [later identified as Wayne Sura]. During one of the phone calls with Stacey, she informed Roushia that she received his Sex Offender Registration documents which were mailed to her rental property located at 1117 Hayes Avenue, Racine, Wisconsin. It is important to note that this is Roushia's last confirmed residence with the Wisconsin Sex Offender Registry in the State of Wisconsin and it is the address that Roushia provided to the Oconto County Sheriff's Office as his address of record. Roushia asked Stacey why the documents were mailed to that address, stating "I haven't lived there in years." Roushia asked Stacey to hold on to the registration documents and indicated he would complete them once released from jail. During other jail calls, Roushia indicated he planned on returning to work at Tony Chen's and Main Moon Chinese restaurants. Roushia also indicated he would try to get paid for helping his mother at her home.

38. On November 2, 2020, DUSM Friedrich developed information, indicating Roushi's mother, Debra Roushia, resides at 1021 Hagerer Street, Racine, Wisconsin.

39. On November 16, 2020, members of the U.S. Marshals Service, Great Lakes Regional Fugitive Task Force (GLRFTF) in Milwaukee arrested Roushia. Roushia was observed entering his mother, Debra Roushia's residence. He was wearing a red hooded sweatshirt and blue jeans. GLRFTF made their approach to the residence and knocked and announced their presence. GLRFTF observed a male individual standing in the kitchen and asked the individual to come to the door. Moments later, Roushia was observed trying to evade law enforcement by crawling through an exterior window on the west side of the home. When challenged by GLRFTF, Roushia climbed back into the residence. The individual in the kitchen came to the front door and identified himself as Debra's boyfriend, James Kemps. James Kemps confirmed Roushia was inside the residence. Due to Roushia's attempted flight, Kemps was asked to step

10

outside the home for his safety and was escorted to a safe location. GLRFTF members began to call out to Roushia from the doorway at which time Roushia responded to those commands, was taken into custody, and removed from the residence.

40. Following Roushia's arrest, GLRFTF members requested and received verbal consent from Kemps to check the residence for additional persons. No other persons were located during that check.

41. Following Roushia's arrest, Supervisory DUSM Jeremy Loesch conducted an interview with James Kemps. Kemps was asked if Roushia had a cellphone. Kemps confirmed that he did but did not know where the phone was located. Two phones were observed in plain view within the residence. However, Kemps stated that neither phone belonged to Roushia. SDUSM Loesch requested and received permission from Kemps to search the bathroom from which Roushia attempted to flee from prior to being taken into custody. A search of that bathroom located a cellphone in the vanity underneath the sink. The phone was hidden behind rolls of toilet paper. The phone was presented to Kemps who believed it to be Roushia's but could not positively identify it. Kemps had previously called Debra Roushia and asked her to return to the residence. Kemps stated that Debra would know if the phone belonged to Roushia. Upon Debra's arrival at the home, she positively identified the phone as belonging to Roushia but stated that another person, "Peanut," owned the phone. During the interview, "Peanut" called Debra. SDUSM Loesch spoke with "Peanut" who identified himself as Wayne Sura. Sura stated that he purchased the phone for Roushia and allowed Roushia to utilize data from his account. Roushia pays Sura for that usage. Sura did admit that although he owns the phone that Roushia was the sole user of the device. The cellphone was seized as evidence and is currently stored in the United States Marshals Service Office in a secured Evidence Room located at the

11

United States Federal Building and Courthouse 517 E. Wisconsin Ave., Suite 38, Milwaukee, WI 53202.

42. At approximately 12:45 hours, DUSM Friedrich attempted to interview Roushia for possible violations of 18 U.S.C. § 2250, Failure to Register. Task Force Officer Ryan Carpenter served as witness to the interview. Roushia declined to be interviewed and requested legal representation. The interview was concluded and Roushia was transported to Racine County Jail.

43. On November 17, 2020, DUSM Friedrich contacted the Racine County Jail regarding the custody status of Roushia. DUSM Friedrich received a message from the Racine County Sherriff's Office. Sergeant Melissa Moran indicated that Roushia was released from custody at the request of Ramsey County Attorney R. Dusterhoft. Attorney Dusterhoft stated their office will only extradite within the State of Minnesota, and Roushia's outstanding warrant had subsequently been modified from its previous designation of nationwide extradition to in state extradition only.

44. On November 17, 2020, DUSM Friedrich received a message from Wisconsin Sex Offender Registry Specialist Sandy Cornell, who confirmed Roushia continues to be non-compliant with his Sex Offender registration requirements. Sandy Cornell indicated Roushia was booked and released from Racine County Jail on November 16, 2020, providing 1117 Hayes Avenue, Upper Unit, Racine, Wisconsin as his booking address. This address is a property that is owned by Roushia's sister, Stacey Littleton, and Roushia states he has not lived at this address for years as noted in paragraph 37.

45. The Device is currently in storage in the United States Marshals Service Evidence Vault located at the United States Federal Building and Courthouse 517 E. Wisconsin Ave. Suite

711. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the GLRFTF.

## **TECHNICAL TERMS**

46. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

47. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at

13

http://www.lg.com,, I know that the Device has capabilities that allow it to make and receive wireless telephone calls, send and receive text messages, the ability to store and retrieve information, send and receive e-mails, network with other devices, access the Internet, as well as taking photographs. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

48. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

49. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

> b. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).
>
> c. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

d. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

e. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

f. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

50. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

51. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve

the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

52. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

16

Case 2:20-mj-00244-WED   Filed 11/20/20   Page 17 of 19   Document 1

# ATTACHMENT A

The property to be searched is a LG Smartphone, Model LM-K500MM, IMEI: 355041-61-268164-8, hereinafter the "Device." The Device is currently stored in the United States Marshals Service Office in a secured Evidence Room located at the United States Federal Building and Courthouse 517 E. Wisconsin Ave., Suite 38, Milwaukee, WI 53202.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of **Title 18, United States Code, Section 2250(a)** and involve **Cisco Roushia** since **October 2, 2019**, including:

   a. Information relating to Cisco Roushia's (hereinafter "Roushia") travel in interstate commerce;

   b. Information relating to where Roushia resided and any employment;

   c. Evidence of who used, owned, or controlled the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," and instant messaging logs;

   d. Evidence of the attachment to the Device of other storage devices or similar containers for electronic evidence;

   e. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Device;

   f. Evidence of the times the Device was used;

   g. Passwords, encryption keys, and other access devices that may be necessary to access the Device;

   h. Telephone number associated with the Device;

   i. Contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.